*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SANDRA KAY HUGGLER,

      Plaintiff-Appellant,

v

WAYNE ARTHUR HUGGLER,

      Defendant-Appellee.

UNPUBLISHED
June 25, 2019

No. 343904
Alpena Circuit Court
Family Division
LC No. 16-007292-DO

Before: METER, P.J., and JANSEN and M. J. KELLY, JJ.

PER CURIAM.

Plaintiff, Sandra Huggler,[1] appeals by right the trial court's judgment of divorce dissolving the parties' marriage and distributing the marital property. Because there are no errors warranting reversal, we affirm.

## I. BASIC FACTS

The parties were married in 1992, and Sandra filed for divorce in July 2016. The marital estate was valued at $806,004.46, and the parties agreed to an equal distribution of the assets. From the parties' real estate, investment and banking assets, titled assets, and personal property, Sandra would receive $71,488.11 and defendant, Wayne Huggler, would receive $384,928.56. From retirement assets, Sandra would receive $273,896.17 and Wayne would receive $71,488.11. To equalize the division of real estate, investment and banking assets, titled assets, and personal property, Wayne would pay Sandra $154,618.47 in "Non Retirement Assets." Similarly, to equalize the division of retirement assets, Sandra would provide Wayne with a Qualified Domestic Relations Order (QDRO) for $101,204.03 from her retirement assets.

Despite their agreement to the above, the parties disputed the method for completing the equalizing payments. Sandra proposed that the $154,618.47 owed to her be paid in full and in

---

[1] For ease of reference, we will refer to the parties by their first names.

cash. However, Wayne submitted that he pay $54,618.47 in cash and, for the other $100,000, offset this from the $101,204.03 owed to him by Sandra, such that Sandra would owe him only $1,204.03 from her retirement assets. Sandra challenged Wayne's proposal, arguing that as a result of tax consequences the $100,000 offset was not equal to $100,000 paid to her in cash because once she withdrew the $100,000 from her retirement accounts she would have to pay taxes and, if she withdrew the funds early, she would also incur a penalty for early withdrawal.

In lieu of a trial and hearing, the parties submitted briefs to the trial court. The trial court ruled in favor of Wayne's distribution proposal, concluding that it would not consider the tax consequences of the distribution. In doing so, the court rejected Sandra's argument that she would "incur predicable and foreseeable tax penalties to cash in the retirement funds," and ruled that, if it accepted Sandra's argument, "it would be forced to speculate when—or even if—she would cash in the accounts." The trial court found Wayne's "position to more accurately and equitably divide the *present value* of the estate." Sandra moved for reconsideration, asserting in an affidavit that she intended to immediately withdraw the retirement funds. The court denied the motion, and this appeal follows.

## II. PROPERTY DIVISION

### A. STANDARD OF REVIEW

Sandra argues that the trial court erred by declining to consider the possible tax consequences arising from the selected distribution method. The trial court's factual findings on the marital property's division are reviewed for clear error. *Hodge v Parks*, 303 Mich App 552, 554; 844 NW2d 189 (2014). Clear error occurs "when this Court is left with the definite and firm conviction that a mistake has been made." *Id*. at 555 (quotation marks and citation omitted). "If the findings of fact are upheld, the appellate court must decide whether the dispositive ruling was fair and equitable in light of those facts." *Sparks v Sparks*, 440 Mich 141, 151-152; 485 NW2d 893 (1992). Because the trial court's "dispositional ruling is an exercise of discretion . . . the ruling should be affirmed unless the appellate court is left with the firm conviction that the division was inequitable." *Id*. at 152.

### B. ANALYSIS

"The overarching goal of a trial court's property distribution in a divorce action is equity." *Elahham v Al-Jabban*, 319 Mich App 112, 121; 899 NW2d 768 (2017). Although the trial court is not required to divide the marital property equally, the property "must be divided equitably in light of a court's evaluation of the parties' contributions, faults and needs." *Id*. (quotation marks and citation omitted).

Sandra argues that the trial court erred by failing to consider the tax consequences of the distribution of property. However, "an abuse of discretion per se does not occur where a trial court declines to consider tax consequences in the distribution of marital assets." *Nalevayko v Nalevayko*, 198 Mich App 163, 164; 497 NW2d 533 (1993). Accordingly, in the present case, the trial court could, but was not required to consider the tax consequences of the property division. In the proceedings below, Sandra initially stated that she intended to withdraw funds from her retirement accounts sometime in the future, and she submitted evidence showing

potential tax penalties arising from the withdrawal of funds from her retirement accounts. Yet, based on the evidence presented, the trial court determined that Sandra had not established that the tax consequences were reasonably likely to occur and were not merely speculative. Given the record before the court, its decision was a reasonable and principled outcome and not an abuse of discretion.

Moreover, even if the court abused its discretion by declining to consider the tax consequences, reversal is nevertheless not warranted because we are not "left with the firm conviction that the division was inequitable." See *Sparks*, 440 Mich at 152. Under the trial court's distribution, the $154,618.47 would be offset by $100,000 from the amount owed to Wayne, i.e., the $101,204.03 in retirement assets. The amount Sandra owed to Wayne, therefore, would be $1,204.03, and Wayne would only need to pay Sandra $54,618.47 in cash, resulting in a perfectly equal distribution of the parties' stipulated assets. If Sandra chooses to immediately withdraw the entire $101,204.03 from her retirement accounts, by her own calculations, she would incur approximately $39,469.57 in taxes and penalties. This would result in a property division that is not equal, but that does not also mean it is unequitable.

This is apparent when the trial court's decision is contrasted with Sandra's proposal. Under Sandra's proposal Wayne would pay her the $54,618.47 and, to offset the remaining $100,000 owed to her, Wayne would waive the entire $101,204.03 amount that Sandra owed to him. Wayne would then pay Sandra an additional $63,796 from his "American Funds account," resulting in a disparity of $130,000.06 in the parties' net awards. Even assuming that Sandra chose to immediately withdraw funds from her retirement accounts and incurred the taxes and penalties that she estimated, this would still result in a significantly higher deficit for Wayne than the alleged $39,469.57 deficit that would result from the trial court's chosen distribution method if Sandra immediately withdrew funds from her retirement account.

For these reasons, we are unpersuaded that the division was inequitable and unfair so as to require reversal of the trial court's discretionary ruling. Again, there is no requirement for the division to be equal; it only need be *equitable*. *Elahham*, 319 Mich App at 121.

### III. RECONSIDERATION

### A. STANDARD OF REVIEW

Sandra also contends that the trial court abused its discretion by denying her motion for reconsideration. We review for an abuse of discretion a trial court's decision on a motion for reconsideration. *Corporan v Henton*, 282 Mich App 599, 605; 766 NW2d 903 (2009). A trial court abuses its discretion "when the decision results in an outcome falling outside the range of principled outcomes." *Id.* at 605-606 (quotation marks and citation omitted).

### B. ANALYSIS

"Ordinarily, a trial court has discretion on a motion for reconsideration to decline to consider new legal theories or evidence that could have been presented when the motion was initially decided." *Yoost v Caspari*, 295 Mich App 209, 220; 813 NW2d 783 (2012); MCR 2.119(F). Although the trial court may "give a litigant a 'second chance' even if the motion for reconsideration presents nothing new," this power rests in the trial court's discretion. *Yoost*, 295

Mich App at 220. Here, Sandra presented new evidence in support of her motion for reconsideration. She argues that, with that evidence, the rationale for the court's decision to not consider the tax consequences is no longer valid. However, the trial court was not obligated to consider her newly submitted affidavit because it could have been produced at any point prior to the trial court's initial order. See *Woods v SLB Prop Mgt, LLC*, 277 Mich App 622, 630; 750 NW2d 228 (2008) (quotation marks and citation omitted) ("We find no abuse of discretion in denying a motion resting on a legal theory and facts which could have been pled or argued prior to the trial court's original order."). Accordingly, we discern no abuse of discretion in the trial court's decision to deny reconsideration.

Affirmed. Wayne may tax costs as the prevailing party. MCR 7.219(A).

/s/ Patrick M. Meter
/s/ Michael J. Kelly